This is a question on which the elementary writers differ, and I cannot find a single common law adjudication on the point. We must, therefore, resort to first principles to decide the case. A last will being in its nature revocable and ambulatory, and being supposed to contain the last wishes of the maker as to the disposition of his property after his death, requires that the maker should be a free agent, not only at the time of making the will, but also at the time of death; otherwise, the power of revocation, which is incident to the very nature of a will, could not be exercised. But I can see no reason why this free agency should continue uninterrupted from the making to the time of death. I think the reason of the thing is answered if it existed at the time of death, and that a temporary want of free agency, such as is effected by the marriage of the maker, being a feme, operates only as asuspension and not as a revocation. If she dies during the marriage, the will is considered as revoked, for if she had desired to revoke it she had not a free will to do it; the law, therefore, does it for her. But if she survives her coverture, and does not revoke it, there is no necessity for the law doing it, for had she desired it she could have done it herself, marriage in this respect operating like captivity. And it seems agreed by all that if a person makes a will and is after taken captive, it operates only as a suspension of the will, and if the maker dies in captivity the will is revoked, but if he regains his liberty it sets up his will again without any republication. But it is said that (303) marriage is different from captivity, because it is voluntary and captivity involuntary. It is true, there is that difference; but I cannot see that different results, not connected with the question whether the situations were voluntarily or involuntarily assumed, should be drawn from it. If the want of the power of revocation was inflicted as a punishment
for crime, then it would be all-important to make this difference in the results; but we know that it is not. The want of that power, to wit, of revocation, arises from want of free agency in both cases; and it is, I think, restored by the restoration of free agency in both cases. This case has also been compared with revocations or rather ademptions, by a feoffment or grant of the lands devised, although the devisor takes back the same estate in the lands. The cases, I think, are very unlike each other. A devise of lands is looked upon as a conveyance, not as a testament is in the civil law, an appointment of an heir; therefore, a person must have that which he devises, as he must have that *Page 166 
which he grants, and there can be no estoppel in wills as in deeds, by which the devisee could take as in case of a deed, for estoppels operate only where there are parties, and there are no parties in a will. The will being ambulatory and revocable it is necessary that the devisor should not only have the power to devise, that is, to grant when he makes his will, but that he should have the uninterrupted power up to the time of his death: by power here I mean ownership in the land. If, therefore, he disposes of the land, the will is revoked, because he has not the thing which is attempted to be granted; and being revoked, a repurchase of the land does not set up the will again, for that can be done only by republication, and a repurchase bears no analogy to a republication. The will in such case is revoked, not because the devisor intended to revoke, but because he had not the power to devise, to (304) grant, for he could not grant that which he had not. The revocation, therefore, in such case is not dependent on free agency; for if in the same conveyance devisor takes back the same estate, yet it is a revocation, which shows that the revocation does not depend on intent. I have used the term revocation in deference to authority, but it is rather an ademption, and, therefore, I have not noticed the marriage settlement; for no question growing out of it can arise upon the probate of a will, and can only arise in contracts about the property devised between the heir and devisee. I, therefore think that the testatrix, being unmarried at the time of making her will and at the time of her death, the will is a good one, that is, not revoked. For these reasons I am of opinion that a new trial should be granted.